IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANOZ MAROZSAN, | No. C 06-04172 WHA |
| Plaintiff-Appellant, | |
| v. | **ORDER AFFIRMING DECISION OF BANKRUPTCY COURT** |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION and THE EDUCATION RESOURCES INSTITUTE, INC., | |
| Defendants-Appellees. | |

## INTRODUCTION

In this bankruptcy appeal, plaintiff-appellant Janoz Marozsan seeks to overturn the bankruptcy court's decision that his student loans were not dischargeable in a Chapter 7 bankruptcy proceeding. This order finds that the bankruptcy judge correctly found that Marozsan did not meet the test for student loan forgiveness because he did not show that he would suffer undue hardship if forced to repay his loans. Accordingly, the decision of the bankruptcy court is **AFFIRMED**.

## STATEMENT

Marozsan filed a Chapter 7 bankruptcy petition on May 18, 2005. On July 18, 2005, Marozsan filed a complaint against defendants-appellees Educational Credit Management Corporation ("ECMC") and The Education Resources Institute, Inc. ("TERI") to determine whether his student loans should be discharged. A bench trial was held on May 1, 2006. The

Honorable Dennis Montali ruled for defendants, holding that Marozsan did not meet the test for undue hardship to have his loans discharged. Judgment was entered against Marozsan on May 5, 2006, in the amount of $277,211.76 in favor of ECMC and $20,741.29 in favor of TERI. Marozsan filed a notice of appeal to the Bankruptcy Appellate Panel for the Ninth Circuit on May 12, 2006. Defendants objected on May 22, 2006, and this appeal was transferred to this Court on June 21, 2006.

Both appellant's and appellees' briefs contain little description of the facts and few citations to the trial transcript, thus it is difficult to discern the facts of this case. This much has been gleaned from the transcript and the briefs. Marozsan is currently 65 years old. He attended podiatric school starting in 1991 and completed his degree in 1995 (Trial Tr. 38:23–2). Loans from ECMC covered both his tuition and living expenses while he attended school. He completed one year of residency in podiatry after graduation but failed to pass his board examinations to be licensed to practice medicine (*id.* at 40:6–20). Thereafter, he attended medical school at age 57 attending school for two years in Belize, and then did two years of clinical work in Chicago. Appellant received his degree in 2003 (*id.* at 43:1–20). This portion of his education was also financed using student loans.

Appellant consolidated some, but not all, of his loans in 2001 through ECMC. After completing his education in 2003, appellant was unable to find work. He sought jobs in the fields of pharmaceutical and medical device sales, real estate and bank loans, and as a San Francisco City and County Deputy Sheriff (*id.* at 23:18–25:25). Marozsan has not worked at a paying job since 1998 (*id.* at 48:17–22). Appellant had not, at the time of the hearing or the appeal, made any loan payments to ECMC, but had made a few small payments to TERI. At the hearing appellant addressed the option of using the Ford Federal Direct Loan Program's income-sensitive repayment plans. He believed that if he got a job, his living situation would have to change. He could no longer share a small studio apartment with his roommate who worked evening hours. His living expenses would necessarily increase because he would need to find his own apartment (*id.* at 26:7–27:12). Marozsan estimated that the maximum yearly salary he could earn would be $40,000 which would require him to make payments of about

$500 per month under the Ford Program (*id*. at 27:18–28:22). Marozsan testified that even if he got such a job, he would not be able to make any payments on his loan and support himself at the same time.

The bankruptcy judge set forth his findings of fact and conclusions of law at the hearing (*id*. at 152:7–160:17). Judge Montali analyzed appellant's claim under the three-prong test for student-loan forgiveness set out in *United States Aid Funds v. Pena*, 155 F.3d 1108, 1111 (9th Cir. 1998). The bankruptcy judge found that Marozsan's standard of living was already minimal even before making payments on his student loans. He held that some of the factors constituting "additional circumstances" for determining hardship favored Marozsan, while some did not. He was not seriously disabled, nor did he need to care for dependents. He had excellent education, which cut against him, but had searched for work in earnest, which was in his favor. He had limited years left in his work life and his opportunities for retraining or relocation would be limited, particularly in view of the term and amount of his student loans. Finally, as to good faith efforts to repay the loans, the judge found that Marozsan had not made any payments to ECMC, however, because of his financial status, he had never been required to do so. The bankruptcy judge also found that Marozsan could take advantage of the Ford Program to repay at least a portion of his loans if he got a job. Under his current circumstances, plaintiff would not be required to make payments even if enrolled in the Ford Program.

Considering the final two factors together, the judge held that Marozsan had not shown undue hardship such that his loans should be discharged. Although Marozsan did not currently have a job and was not required to make payments on his loans, the Ford Program would give him the option of making loan payments adjusted to his income. Because of this, Judge Montali held that Marozsan had not shown undue hardship that warranted his student loans being discharged in bankruptcy.

## ANALYSIS

### 1. STANDARD OF REVIEW.

The bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, while conclusions of law are reviewed *de novo*. *In re Jan Weilert RV, Inc.*, 315 F.3d 1192,

3

1196 (9th Cir. 2003). The bankruptcy judge's findings of fact must be accepted unless this Court is "left with the definite and firm conviction that a mistake has been committed." *Ibid*.

A single issue has been challenged on appeal: whether Marozsan met the standard for his student loans to be discharged for undue hardship under 11 U.S.C. 523(a)(8).

**2.   PROCEDURAL ISSUES.**

Appellees ECMC and TERI first argue that Marozsan's appeal is fatally defective because he failed to file an excerpts of record with the court. Those rules, however, do not apply to bankruptcy appeals heard by federal district courts. *See* FRAP 1(a). The district court's rules govern. Here, ECMC and TERI attack Marozsan's appeal because he did not file an excerpts of record. He did not need to. Under Bankruptcy Local Rule 8006-1, "[t]he record on appeal shall include a transcript of the hearing or a summary thereof agreed upon by all parties." A transcript of the hearing was filed on October 25, 2006, as was a copy of the bankruptcy court's judgment. Appellees are correct, however, that Maroszan has made only the barest citations to the record. He lays out few facts surrounding this appeal and fails to specifically point out evidence that the bankruptcy judge failed to consider in making his decision. These omissions make resolving this appeal more difficult, but to the extent that appellant raises viable arguments, this order addresses them.

**3.   DISCHARGE OF STUDENT-LOAN DEBT.**

Loan obligations made for educational purposes are not discharged in a Chapter 7 proceeding "unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. 523(a)(8). The term "undue hardship" is not defined in the statute. The Ninth Circuit uses a three-part test to determine whether the non-discharge of student-loan debt would cause an undue hardship. The debtor must show: (1) that he or she cannot maintain, based on current income and expenses, a "minimal" standard of living for himself or herself if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has

4

1  made good-faith efforts to repay the loans.  *United Student Aid Funds, Inc. v. Pena*, 155 F.3d
2  1108, 1111 (9th Cir. 1998) (citing *In re Brunner*, 831 F.2d 395, 396 (2d. Cir. 1987)).

### A. Inability to Maintain Minimal Standard of Living.

The bankruptcy judge found that Marozsan had not earned any income in the past several years and that he was living "an extremely frugal existence."  He shared a one-room apartment with a roommate who occasionally helped him out with expenses such as food and rent.  Based on the record, the bankruptcy judge's findings of fact here are not clearly erroneous.  They will not be disturbed.  From these facts, the bankruptcy judge concluded that Marozsan would be unable to maintain that standard of living if forced to repay his student loans.  Although reviewed *de novo*, this conclusion of law is free from error as well.  Any loan payments would represent additional expenses that would make Marozsan's already-precarious financial condition even more dire.

### B. Additional Circumstances.

"[T]he burden is on the debtor to provide the court with additional circumstances, *i.e.*, circumstances beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the repayment period."  The factors a court can consider include, but are not limited to:  (1) serious mental or physical disability of the debtor which prevents employment or advancement; (2) obligations to care for dependents; (3) lack of or severely limited education; (4) poor quality of education; (5) lack of usable or marketable job skills; (6) underemployment; (7) maximized income potential in the chosen educational field; (8) limited number of years left in the debtor's work life to allow repayment of the loans; (9) age or other factors that prevent retraining or relocating; (10) lack of assets, exempt or not; (11) potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets or increases in the debtor's income; and (12) lack of other better financial options elsewhere.  *In re Nys*, 446 F.3d 938, 946–47 (9th Cir. 2006) (citations omitted).

In his decision, the bankruptcy judge discussed each of these factors, attempting to assign weights to them.  The bankruptcy judge found that appellant had no disabilities, no obligations to care for dependents, his education was of good quality, and he had many

marketable job skills.  He also found that Marozsan had made efforts to gain employment, but that he had not maximized his income earning potential given his skill set and training. Marozsan's age was a factor in his favor, as was his lack of assets, and the long term and high amount of the loan.  The facts support this conclusion.  The bankruptcy judge held that on balance, this factor favored Marozsan.

Additional circumstances are used to rebut the presumption that a debtor's financial situation will improve over time.  *Id*. at 946.  In his brief, Marozsan seems to argue that the bankruptcy judge did not give enough weight to the additional circumstances he presented at trial.  In support, appellant cited to his description of his job search and failure to find employment.  Marozsan's contention that the bankruptcy judge did not consider this factor is incorrect.  Indeed, the bankruptcy judge held that the additional circumstances, particularly Marozsan's age and inability to find work favored him somewhat.  Even so, under *Pena* the debtor must meet each of the three prongs of the test.  155 F.3d at 1111.  In any event, this order holds that the bankruptcy judge's ruling was not in error on the second factor.

Marozsan contends that the bankruptcy judge's consideration of the Ford Program would require Marozsan to improperly speculate about his future income.  It is difficult for courts to predict future income, thus "additional circumstances" are used to show that the debtor's current financial condition will persist into the future.  *Nys*, 446 F.3d at 938. Marozsan's argument has no basis.  The bankruptcy judge was not speculating as to appellant's future income, he was properly analyzing the additional factors appellant identified as indicating that his financial condition would not improve.  Even reviewing the bankruptcy judge's findings of law *de novo*, as this order must, appellant has not shown that the bankruptcy judge's decision as to additional factors was in error.

### C. Good-Faith Effort to Repay Loans.

Finally, the debtor must show that he or she has made a good-faith effort to repay the loans.  The bankruptcy judge found that the Marozsan had made no payments toward his loans from ECMC, but that because he had never been employed after completing his schooling, he was not required to do so.  Marozsan had made a few small payments toward his loans with

6

TERI. The bankruptcy judge also found that although Marozsan had looked into the program, his mental calculations at the hearing were not sufficient to show that he could not take advantage of it. The bankruptcy judge noted that the Ford Program was not a punishment, and that if Marozsan were to get a job and make a decent amount of money, it would only be fair that he should pay back some his loans. If his income stayed below the poverty line, he would not have to make payments. Marozsan has not produced any evidence to show that any of these findings of fact were clearly in error.

Marozsan also seems to argue that the bankruptcy judge improperly imposed an additional condition that he should enroll in the Ford Program's income-sensitive repayment plan. The bankruptcy judge, appellant contends, failed to consider his testimony that the Ford Program would not benefit him. The bankruptcy judge stated that "it's clear from his testimony now that he can — he is eligible for [the Ford] program, that if his situation does not change, that he will live out the rest of his life and not have to pay anything, even when he takes his social security, and that's all the law requires of him" (Trial Tr. 157:4–9). In deciding that Marozsan did not meet the test for undue hardship, the bankruptcy judge did consider appellant's testimony, he merely discounted appellant's back-of-the-envelope calculations that the program would not benefit him.

Even though the bankruptcy judge addressed the final two prongs together, he concluded that Marozsan had not made a good-faith effort to pay back his loans because the Ford income-sensitive repayment program was available to him. Under the Ford Program, if appellant never worked again, he would not have to make any payments. If appellant got a job, he could pay back at least a small sum toward his loans. Any payment appellant would make would be contingent on how much he earned. The bankruptcy judge's analysis was correct.

Accordingly, Marozsan has not shown that the bankruptcy court's ruling that he did not meet the undue hardship test was in error.

## CONCLUSION

For all of the above-stated reasons, the ruling of the bankruptcy judge is **AFFIRMED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: February 23, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE